GIVENS, *Plaintiff in Error*, v. THOMPSON *et al.*

In Banc, June 6, 1892.

1. **Petition**: PRACTICE: RES JUDICATA: DEMURRER. Where the material issues of fact tendered for trial in a petition are the same as those tendered, joined and adjudicated in a former case between the same parties, it fails to state an existing cause of action, and is demurrable.

2. ———: ———: ———. An offer made in an answer which is not accepted is concluded by the adjudication of the cause, and the plaintiff cannot, by acceptance after judgment, create any new cause of action.

*Error to St. Louis City Circuit Court.*

AFFIRMED.

*W. W. Fry* for plaintiff in error.

(1)   A demurrer will not lie to a bill on the ground of *res adjudicata*. Such defense must be raised by answer. *Kelly v. Hurt*, 61 Mo. 466. A former judgment is not necessarily conclusive to all the facts arising on the record, and parol evidence is admissible to show whether a question was determined in a former suit. *Hickman v. Mexico*, 58 Mo. 61; *Armstrong v. St. Louis*, 3 Mo. App. 100; *Spradling v. Conway*, 51 Mo. 51. Therefore, whether the matter complained of has been adjudicated must be determined on answer, and defendants' demurrer should have been overruled. (2) As to the second cause of demurrer, it appears that plaintiff did accept defendants' offer to allow plaintiff to redeem on their terms and in writing. *Ulrica v. Papin*, 11 Mo. 43. (3) Whether plaintiff is entitled to recover under his petition is strictly a question of fact, and the evidence must be heard to properly determine it. 2 Wait's

Practice, p. 452. (4) It was error to sustain the demurrer. Story's Equity Pleadings [10 Ed.] secs. 448, 449, 456, 790–793, and note; *Brooks v. Hewett*, 3 Ves. 255; *Tesson v. Tesson*, 11 Mo. 274; *Ulrica v. Papin*, 11 Mo. 43; *Jones v. Paul*, 9 Mo. 293.

*D. T. Jewett* for defendants in error.

A demurrer to the plaintiff's petition was the only proper pleading that defendants could make. Our statute provides that the defendant may demur when it appears from the petition or bill that the plaintiff has no cause of action. This practice is fully sustained by the authorities. 2 Herman on Estoppel & Res Adjudicata, secs. 1276, 1277; *McFarland v. Rogers*, 1 Wis. 452; *Trimble v. State*, 4 Blackf. 437; *Beckett v. Bradley*, 7 Man. & Gran. 994; *Collins v. Mitchell*, 5 Fla. 369.

BRACE, J.—This action is brought here by writ of error, to reverse the judgment of the circuit court of St. Louis county sustaining a demurrer to the plaintiff's petition, which was in two counts; the second count being substantially the same as the first, it will be necessary to set out only the first count of the petition and the demurrer thereto.

The first count of the petition is as follows:

"Plaintiff states that heretofore, to-wit, August 9, 1873, the St. Louis Marble Company, a corporation, was the owner and in possession of the following described real estate in the county of St. Louis, state of Missouri, to-wit: The southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter of section number 3, and also the south half of the northeast quarter, the southeast quarter, the

northwest quarter and the southwest quarter of section 10, all in township 44 north, range number 3 east, containing together seven hundred and sixty-seven and eighty-hundredths acres.    That on said ninth of August, 1873, said company made, executed and delivered to trustees a certain deed of trust to secure a certain indebtedness of said company.    That said debt so secured was not paid at maturity, and, at the request of the holder of said debt, the trustee advertised said property for sale pursuant to the terms of said deed.    The plaintiff being an indorser for said company in a large amount, and said property being worth many times the amount of the debt which it secured, plaintiff made an agreement with one William Groshon to buy, and said Groshon did buy said property and did on the twenty-first of April, 1874, receive a deed therefor, in his own name, but on the further understanding and agreement that he, said Groshon, was to hold said property as security for the money so paid by him therefor, but which money was to be a loan by said Groshon to plaintiff, and that whenever said Groshon wanted the money plaintiff was to repay the same and take the property.    That afterwards said Groshon demanded his money, and plaintiff borrowed from defendant Thompson, in May, 1874, the sum of $7,140, and with said money paid said Groshon the sum paid by him for said property.    That, in order to secure the said Thompson said $7,140, plaintiff caused said Groshon to make a direct conveyance of said property to said Thompson, upon the understanding and agreement that said Thompson should hold the same as security for said $7,140, which plaintiff by his certain promissory note of date May 11, 1874, promised to pay said Thompson in ninety days after date.    That thereafter said Thompson loaned plaintiff further sums of money, upon the same security, so that on August 10,

1874, the total debt amounted to $7,600, and thereafter said Thompson loaned plaintiff further sums of money, upon the same security, taking plaintiff's notes therefor so that in July, 1876, plaintiff owed said Thompson the sum of $15,000.

"That, immediately upon said Groshon buying said property as aforesaid, plaintiff took possession thereof, and, when the same was transferred to defendant Thompson as aforesaid, plaintiff still remained in possession thereof and used and controlled the same as his own, without being liable for rents, issues or profits in pursuance of his said agreement with said Thompson that he, said Thompson, should hold the legal title thereto only as security for said loans. That on the sixth of February, 1875, plaintiff was very ill, having been stricken with paralysis, and was daily expected to die, was in no condition to transact business, and that said Thompson on said day procured from plaintiff an order of said property to said Thompson, which in phraseology of said Thompson on the representation and agreement that he would still hold the same as security for his loans aforesaid, and that plaintiff's rights should not be injured by said Thompson having possession thereof. That thereafter said Thompson held said property according to said agreement, and frequently repeated to plaintiff and others that he simply held it as such security for said loans. That said Thompson did not thereafter at any time demand payment of said loans from plaintiff, but, to-wit, on the twenty-fourth of July, 1876, said Thompson, without the knowledge or consent of plaintiff, arranged with one Durham, agent for defendants, Cobb, Wight & Case, so that a deed to said property from said Thompson to said Cobb, Wight & Case was deposited with the Valley National Bank of St. Louis, together with drafts by said Durham on said Cobb, Wight &

Case in favor of Thompson for $15,000, on condition when the drafts were paid said deed was to be delivered by said bank to said Cobb, Wight & Case. That before the payment of said drafts or delivery of said deed plaintiff notified said Cobb, Wight & Case of said agreement between said Thompson and himself, and that said Thompson had no right to sell property and warning them against paying said money to said Thompson. That notwithstanding said notice and warning said Cobb, Wight & Case paid said money, and said deed was delivered to them, in pursuance of an unlawful conspiracy between said Thompson and said Cobb, Wight & Case to cheat plaintiff out of his property. That afterwards, on the —— day of November, 1879, as soon as plaintiff had sufficiently recovered from his sickness, and had been able to try to procure his property from defendants, but without success, he instituted in the circuit court of St. Louis county, where said property was located, his certain suit in equity in words and figures, as follows, to-wit:

" 'Plaintiff, James Givens, states that, on the ninth [day of August, A. D. 1873, the St. Louis Marble Company, a corporation, was the owner and in the possession of the following described real estate in the county of St. Louis, state of Missouri, to-wit: The southwest quarter of the northeast quarter, and the northwest quarter of the southeast quarter, and the northeast quarter of the southwest quarter of section number three (3); also the south half of the northeast quarter, the southeast quarter, the northwest quarter and the southwest quarter of section ten (10), all in township 44 north, range number 3 east, containing seven hundred and sixty-seven and eighty-hundredths acres. That on said last-mentioned date said company executed and delivered in due form to certain trustees a deed of conveyance, whereby it con-

veyed to said trustees the real estate above described, with all the appurtenances appertaining thereto; in trust, however, to secure payment of a certain indebtedness (in said deed fully set forth), and in trust to sell said property and apply proceeds of said sale to the discharge of said indebtedness in event the same was not previously paid when due, and to make the purchaser at such sale a valid deed of conveyance of the title of said company to said lands. That in due course said debt became due and was unpaid, and thereupon, at the request of the legal holder of evidences of the indebtedness secured by said deed of trust, said trustees advertised said property, and sold the same to satisfy the terms of said trust in full conformity to the said deed of trust mentioned above, and at such sale one William Groshon was the highest and best bidder, and the property aforesaid was accordingly struck off to him; and the trustees vested with said power by the deed aforesaid made and delivered to said Groshon a deed of conveyance of said property on the twenty-first day of April, A. D. 1874, which was duly recorded in the office of recorder of deeds, of the county of St. Louis (at that time), in book 495, page 396. That in making said purchase, and taking said deed, said Groshon was not acting for, and did not claim or intend to act for, himself; but, on the contrary, was at the time, as an act of friendly kindness, acting for plaintiff, and in his interest furnished the consideration money paid to said trustees for said deed of conveyance, by way of loan of said money to said plaintiff. That said Groshon recognized said plaintiff's entire ownership of said property, and that he, said Groshon, was merely the owner of the legal title in trust to secure the amount of said advance to the plaintiff who remained the owner of the equitable title thereto. That thereafter plaintiff obtained Charles P. Thompson,

defendant, to be substituted for said Groshon under the same trust and agreement above defined, and that in accordance therewith said Thompson accepted a conveyance of the legal title of said property from said Groshon by a deed dated May 9, 1874, and paid to said Groshon by way of loan to plaintiff the sum advanced by said Groshon to said trustee as aforesaid, and also on the faith of said security advanced to plaintiff other valuable considerations, so that at said last date the sum due and owing by plaintiff to said Thompson was the sum of $7,600, which at the time Thompson accepted said last-named deed of conveyance, it was agreed, should stand as an indebtedness of plaintiff to said Thompson secured by the legal title to said land, held in trust to secure said indebtedness of plaintiff which was to be thereafter repaid by plaintiff with interest at the rate of —— per cent. per annum. That, in defiance and violation of said deed of trust, said Thompson, by deed dated on July 24, 1876, conveyed said real estate to defendants, Francis Cobb, H. W. Wight and John S. Case, without recognizing said trust. That said defendants immediately and wrongfully took possession of said property, which, by terms of the agreement between said Thompson and plaintiff, was to remain with plaintiff, who was to have and receive the rents, issues and profits of said estate. That said rents and profits are worth a large sum unknown to plaintiff. That defendants had at the time of said purchase by them full notice and knowledge of the nature and extent of said ownership of Thompson of said property, as above defined, and that his title legal was subject to the said equity of redemption in plaintiff. That, by reason of said defects, plaintiff prays that he may be allowed to redeem said property by paying said indebtedness of $7,600, with interest at six per cent. per annum, from August 10, 1874 (that

being the date to which time plaintiff had adjusted the interest on said $7,600 with said Thompson), and he prays that defendant be required to make discovery of and account for the rents, issues and profits of said property, and for the thereto appertaining appurtenances, described in said original deed of trust, of said company herein first mentioned. That plaintiff may receive credit for said rents, issues and profits upon account of his indebtedness, and that upon payment of any balance remaining due by plaintiff (which he hereby offers to pay, as well as any and all just charges, interest and any other equitable demand justly due by him by reason of any of the foregoing facts), the title to said land, equitable and legal, be vested in plaintiff absolutely, and for such further relief as may be just and equitable.

.'' 'W. G. RAINEY, MARSHAL & BARCLAY,

'' 'Attorneys for Plaintiff.'

"That thereafter the defendants filed their answer in words and figures following, to-wit:

"' 'The defendants, Cobb, Wight & Case, answering, say they have no knowledge or information sufficient to form a belief whether or not said Wm. Groshon, at the sale made by the trustee in the deed of trust given by the St. Louis Marble Company on said property named in the plaintiff's petition, became the purchaser of the property for himself, or whether or not said Groshon recognized plaintiff's ownership of the property, subject only to the incumbrance of the money advanced at said sale, or whether or not Charles T. *alias* Charles L. Thompson afterwards took the place of Groshon, advancing money to said Groshon, and holding said property in trust as alleged in the petition, for the benefit and use of plaintiff, subject only to the incumbrance of the money advanced by said Thompson as alleged in said petition, or whether or not said sum,

so advanced by said Thompson, was or not the sum alleged in the petition.

"'Defendants admit that, on or about the twenty-fourth of July, 1876, said Thompson conveyed to these defendants the southeast quarter, the southwest quarter, the northwest quarter, and the south half of the northeast quarter of section 10, township 44, range 3 east; but deny that any other or more land was conveyed to them by said deed, or any other deed of said Thompson.

"'These defendants deny that said Thompson, in making said deed, violated any trust to said plaintiff, and deny that said Thompson, at the date of said conveyance, was under any obligation to hold said land in trust for said plaintiff, and deny that said Thompson was so holding said land at said time. Defendants deny that they wrongfully took possession of said land, and deny that, at or before said conveyance to them by said Thompson, they had any knowledge, notice or information of any such trust as alleged in plaintiff's petition, or of any claim, or pretended claim, of said plaintiff, in equity or in law, to said land.

"'Defendants aver that they had the chain of title to said land examined before purchasing the same, and were informed and believed that said Thompson had good right to sell and convey the same to them free from any and all claims.

"'That there is not now, and was not then, any evidence of record, nor in writing in any way, to the knowledge or information of these defendants, of any such trust in favor of plaintiff, as alleged in the petition, or of any trust,—the defendants deny that any such existed.

"'Defendants aver that they took possession of said property in good faith, and, finding it in a neglected, bad and run-down condition, and wholly unpro-

·ductive as it was, that they were under the necessity of making, and did make, large and expensive repairs and improvements upon the same, far exceeding all the income or rents from the same.

" ' Defendants aver that in addition to the purchase money they paid, viz., $15,000 they have laid out and ·expended on said property, in repairs and improvements, more than $15,000 additional, over and above .all net proceeds, so that they are now out of pocket more than $30,000 on account of said property.

" ' They aver that all of said repairs and improvements were necessary and proper to put the property in condition to pay any profits in working the same.

" ' That the only value of said lands and property consists in the quarry of lime rock on said land, and the kilns, railroad track, cars and all the necessary .apparatus and machinery for working and running lime kilns.

" ' Defendants deny that the rents and profits from ·said land were worth anything till after they had made large and expensive improvements, and aver that before they took it and made said improvements said quarries had always been worked at a loss, whenever they were worked.

" ' The defendants say they are ready and willing to convey the said property to the plaintiff or anybody else who will repay to them the money they have expended for the purchase, improvements and repairs, with ten-per-cent. interest, after deducting all rents and profits. In short, for the money they have expended, with ten-per-cent. interest. Defendants ask for judgment and their costs.     By D. T. JEWETT,

" ' Their Attorney.'

" That thereafter such further proceedings were had therein, that, on the —— day of October, 1884, the supreme court of Missouri decided said case

against plaintiff and refused the prayer of his said petition. That thereafter, on the —— day of ——, 1885, plaintiff, in writing, accepted the said offer of said Cobb, Wight & Case, to sell and convey said property to plaintiff at and for the sum they had expended for the purchase, improvements and repairs, with ten-per-cent. interest, and notified said defendants of his readiness to pay said sum and take said property. That, though often requested, defendants have failed and refused to sell and convey said property to plaintiff upon said terms, or upon any terms. That said property was reasonably worth the sum of $1,000,000.

"Wherefore, by reason of the premises, plaintiff says that he has been injured in the sum of $1,000,000, for which he prays judgment, and also that defendant be ordered and decreed to convey said property to plaintiff of such sum of money, and that the title thereto may be divested out of defendants, and decreed as may be right and proper."

The demurrer to the first count of the petition is as follows: "*First*. Because it appears by the petition that the very same matter complained of, and the same cause of action as set forth in the first count in said petition, has been passed upon and adjudicated by this court and the supreme court of this state in an action between the same parties plaintiff and defendants, and has been in said action between the parties to this action decided fully and completely against the plaintiff, as it appears of record in this court, and as the same is set forth in the plaintiff's petition in this case. Wherefore, defendants say that the first count of plaintiff's petition does not set forth or allege any facts that show on its face that plaintiff has any cause of action against defendants.

"*Second*. Defendants for further cause of demurrer to said petition say that in the said first count in said

petition the said plaintiff does not aver that he ever offered to pay to the defendants, or that he has ever tendered to defendants, the amount of their said outlay on account of said property, with ten per cent. on the same, and he does not, in said petition, offer to pay the same into court.

"*Third.* Defendants, for further cause of demurrer to said first count say, that it plainly appears by the allegations in said count and contents of the defendants' answer as set forth in said count, that the offer of defendants to the first suit as set forth in said count of said petition was made by the defendants to be acted upon and accepted, if at all, as a part of the proceedings in that case, and not as a standing offer to be accepted by plaintiff at any time after he had refused to accept it in said suit, and had proceeded with said suit to final judgment, and has been beaten in the same.

"Wherefore, defendants say said first count in said petition does not set forth any cause of action."

I. It plainly appears from the face of the petition, so far as it stated a cause of action, that every material issue of fact tendered for trial in the petition in this case was tendered, joined, tried and adjudicated in the former case, recited in the petition; when such is the case, the petition fails to state an *existing* cause of action, and is obnoxious to demurrer, and this is the proper course to pursue. Herman on Estoppel & Res Judicata, secs. 1276, 1277, and authorities cited.

II. The only distinction that counsel for plaintiff undertake to point out between the present and former case is, that in the former the plaintiff asked to redeem upon paying the $15,000 loaned, and the defendants, in their answer, offered to convey the property to plaintiff, or anybody else who would refund to them the money they had expended for it and on it, alleged to have been

$30,000, with ten-per-cent interest.   And in the present case the plaintiff alleges in the petition, that after the former case had been decided against him he accepted the defendants' offer in writing.   This offer and acceptance, counsel seem to contend, creates a new and different cause of action, the merits of which were not passed upon in the former case upon which the plaintiff is entitled to sue, or in some way gives the plaintiff a right to retry the original case with this feature superadded, and to now obtain a conveyance of the property upon compliance with the terms contained in the offer in the defendants' answer in the former suit, which it is alleged he accepted after that suit was decided against him, or damages for a refusal now to make that offer good.   We confess our utter inability to appreciate the force of the argument, by which it is thought such a result can be accomplished.

If the offer made by the defendants in their answer can be considered a direct offer to the plaintiff of any specific terms, it was made in and for the purpose of that suit only, and at best can be considered as a proposition of terms, upon which, so far as the defendants were concerned, they were willing that it might be disposed of.   Acceptance of it, then, might have obviated the necessity of submitting their controversy to the judicial tribunal before which it was then pending for arbitrament, the only purpose for which it could have been made; but the plaintiff refused to accept the offer, insisted upon having the issues between him and the defendants tried and adjudicated by that tribunal, and, when they were so finally adjudicated, the final judgment of the court concluded the merits of all the issues in the case as presented in the pleadings, as also all offers made therein; and thereafter there was none, which could be accepted, or made binding upon either

party by a subsequent expression of an acceptance, or a willingness to accept such offers.

We fail to find in the petition any cause of action against the defendants that has not already been finally adjudicated between the parties, according to the averments therein contained.

The demurrer was properly sustained, and the judgment is affirmed. All concur, except BARCLAY and MACFARLANE, JJ., not sitting.